IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 3:06-10-1 |
| ) | |
| ANDRE L. DANIELS, a/k/a "Oneyea," ) | JUDGE KIM R. GIBSON |
| a/k/a "One," ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION & ORDER

**GIBSON, J.,**

### I. INTRODUCTION

Now before the Court is Defendant's Motion to Withdraw Guilty Plea (Document No. 191) and the Government's response thereto (Document No. 201). On October 16, 2006, Andre Daniels, a/k/a "Oneyea," a/k/a "One" (hereinafter "Defendant" or "Daniels"), appeared before this Court and plead guilty to Count 1 of the indictment at Criminal Number 2006-10-1, charging him with conspiracy to distribute and possess with intent to distribute five hundred grams or more of cocaine and five grams or more of cocaine base, Schedule II substances, from in or around July 2004 to on or about May 13, 2005, in violation of 21 U.S.C. § 846. Trans. of Hearing (Document No. 190). The United States Probation Office (hereinafter "Probation Office") prepared a Presentence Investigation Report (hereinafter "PIR"), which indicated the applicable Sentencing Guidelines range to be between 188 and 235 months of imprisonment. Though the offense level in the PIR's calculation was raised on the basis of Defendant's leadership role in the offense, that enhancement was preempted by Daniels' career-offender status, which raised the offense level well beyond what it otherwise would have been.

On January 29, 2007, Defendant filed several objections to the PIR and moved for downward departures from the PIR's calculation of the applicable Sentencing Guidelines range. Document No.

185. Defendant specifically objected to the upward adjustment for his leadership role and complained about the use of information that he had provided investigators pursuant to an agreement with the Government. The Court tentatively adopted the PIR's Sentencing Guidelines calculation on February 20, 2007. Document No. 196. In the interim, on February 15, 2007, Defendant filed the Motion *sub judice* and a hearing on the Motion was held on February 26, 2007. For the following reasons, Defendant's Motion to Withdraw Guilty Plea is denied.

## II. STANDARD

The withdrawal of an accepted guilty plea is not a right but a privilege. *United States v. Blount*, 940 F. Supp. 720, 738 (E.D. Pa. 1996). Although "motions to withdraw guilty pleas made before sentencing... should be granted freely," *Gov't of V.I. v. Berry*, 631 F.2d 214, 219 (3d Cir. 1980) (citing *United States v. Young*, 424 F.2d 1276, 1279 (3d Cir. 1970); *United States v. Stayton*, 408 F.2d 559, 560 (3d Cir. 1969)), this rule of liberal construction is circumscribed by the substantial burden a defendant carries to demonstrate a fair and just reason for the withdrawal. *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003). In the Third Circuit,

> the defendant is not entitled to withdraw [an accepted guilty] plea simply at his whim. Rather, pursuant to Federal Rule of Criminal Procedure [11(d)], a defendant must have a "fair and just reason" for withdrawing a plea of guilty. A district court must consider three factors when evaluating a motion to withdraw a guilty plea: (1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal.

*Id.* (citations omitted).[1] These factors are not mandatory, but are meant to guide a court's discretionary

---

[1] Rule 11(d) states:

> A defendant may withdraw a plea of guilty or nolo contendere:

2

finding as to whether fairness and justice warrant withdrawing a validly entered guilty plea. *United States v. Martinez*, 785 F.2d 111, 114 (3d Cir. 1986).

Defendant first argues that fair and just reasons support his request because "the [PIR] includes derogatory or detrimental information obtained by the Government via [Daniels'] voluntary debriefing on September 13, 2005.... The Defendant avers that the information should have been protected under the terms of the letter agreement between the parties dated September 9, 2005." Document No. 191, ¶ 7. Secondly, Daniels argues that he misunderstood the provision in his plea agreement with the Government relating to possible sentences. Paragraph C.1.A of the plea agreement states that the "penalty that may be imposed on [Defendant] is: A term of imprisonment of not less than 5 years and not more than 40 years." Document No. 134, p. 4. Defendant claims that prior to his review of the PIR, he understood that his counsel, counsel for the Government, and the Probation Office had agreed on a particular sentence. Document No. 191, ¶ 10. Lastly, Daniels complains that he was never informed by counsel that his sentencing calculation could be enhanced under U.S.S.G. § 3B1.1 for his role in the offense. Document No. 191, ¶¶ 7-14.

### III. ANALYSIS

#### A. Assertion of Innocence

"Bald assertions of innocence are insufficient to permit a defendant to withdraw his guilty plea. 'Assertions of innocence must be buttressed by facts in the record that support a claimed defense.'"

---

...
(2) after the court accepts the plea, but before it imposes sentence if:
 (A) the court rejects a plea agreement under Rule 11(c)(5); or
 (B) the defendant can show a fair and just reason for requesting the withdrawal.

3

*Jones*, 336 F.3d at 252 (quoting *United States v. Brown*, 250 F.3d 811, 818 (3d Cir. 2001)). Daniels maintained at the February 26 hearing that he neither organized nor lead the conspiracy. Document No. 210, pp. 15-16. Though he admits possessing and selling drugs, he stated that "I did not conspire with all these individuals." *Id*. at 16. This stands in contrast to Defendant's sworn testimony at the October 16 change-of-plea hearing:

> **The Court:** Mr. Daniels, did you as charged in Count I of the Indictment . . . conspire to distribute and possess with intent to distribute 500 grams or more of cocaine and five grams or more of cocaine base . . . from in or around July 2004 to on or about May 13, 2005?
> **A:** Yes, your honor.

Document No. 190, p. 26. Additionally, Defendant had no qualification or objection at that hearing to the Government's description of the evidence against him:

> **Assistant United States Attorney:** Your Honor, the evidence would establish that Mr. Daniels . . . ran a cocaine and cocaine base distribution operation that began in or around July of 2004 and lasted until his arrest on May 13th of 2005. . . . Mr. Daniels' role in the conspiracy was to obtain the drugs, have individuals secret the drugs for him or carry the drugs for him, to deliver drugs for him, with the money coming back to Mr. Daniels. One of the objects of the conspiracy during this entire period, Your Honor, was to distribute and possess with the intent to distribute more than one half of a kilo of cocaine, which is more than 500 grams and also more than five grams to crack cocaine. . . .
> . . .
> **The Court:** All right. Mr. Daniels, you have heard the Assistant United States Attorney describe the evidence that he would produce at the trial in this matter, is there any respect in which you disagree with what he has said?
> **The Defendant:** No, Your Honor.
> **The Court:** Is the indictment true to your own personal knowledge?
> **The Defendant:** Yes, Your Honor.

*Id*. at pp. 26-30. Assertions of innocence are entitled to little weight when a defendant has credibly admitted guilt through sworn testimony at a prior proceeding. *United States v. Trott*, 779 F.2d 912, 915

4

(3d Cir. 1985). Even if his admission of guilt at the October 16 hearing was less reliable, however, Defendant has not cited to anything in the record supporting his claim of innocence. The facts in this case are identical to those the Third Circuit addressed in *Jones*, where "[the defendant] listened to the Government's recitation of the material facts underlying his offenses and conceded the accuracy of those facts .... then denied those facts at [a subsequent] hearing, but did not explain why his position had changed so markedly." *Jones*, 336 F.3d at 253. The Court must therefore conclude that Daniels has failed to demonstrate how this first factor helps carry his burden.

## B. The Strength of Defendant's Reasons for Withdrawal

The factors that guide the Court's discretion are not mandatory, and Defendant's failure to meaningfully assert his innocence does not preclude the withdrawal of his guilty plea. However, the Court cannot find that Defendant's other proffered reasons are sufficient to undermine the validity of that plea or justify its nullification.

### 1. The September 9 Agreement

There was an agreement between Daniels and the Government dated September 9, 2005, that limited the latter's ability to use information disclosed in an interview with Defendant held four days later. Document No. 187, Exh. A. To quote that document:

> In any prosecution brought against Andre Daniels by the office of the United States Attorney for the Western District of Pennsylvania, except in a prosecution for perjury or false statements, the government will not offer in evidence in its *case in chief* any statements made by Andre Daniels pursuant to this agreement.

*Id.* at 2 (emphasis added). Defendant claims—and the Government concedes—that the Probation Office included in the PIR information disclosed at the subsequent debriefing. While Defendant posits that

5

this usage constitutes a violation of the September 9 agreement, the Government insists that it complied with all of its obligations under that document. *Compare* Document No. 191, ¶ 7 *with* Document No. 201, pp. 5-7. The United States also asserts that even if it did breach the agreement, that violation had no affect on the PIR's sentencing recommendation because the information was used solely for background purposes. Document No. 201, p. 6.

Defendant has not articulated any way in which the use of information gleaned in the September debriefing justifies granting his Motion. Even if the Government had violated an agreement with Daniels, the issue is not whether that violation influenced any subsequent Sentencing Guidelines range calculation or recommendation by the Probation Office. The issue is whether Defendant can present a fair and just reason for withdrawing his guilty plea. Particularly in the wake of *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005) (finding that the Sentencing Guidelines are only advisory), the Court doubts that the calculation or recommendation of an applicable Sentencing Guidelines range can ever satisfy the standard set forth in FED. R. CRIM. P. 11(d).[2] To the extent that a defendant is dismayed or surprised by an unexpectedly high Sentencing Guidelines calculation, Local Criminal Rule 32.1.D provides the means by which he may register an objection. Indeed, Daniels took advantage of that provision when he filed his Position with Respect to Sentencing Factors, wherein he first alleged a violation of the September 9 agreement. Document No. 185. To now permit the same objection to justify nullifying his previously-accepted guilty plea would risk violating the Third Circuit's edict that "the fear of punishment [is] not [an] adequate reason[] to impose on the government

---

[2] Of course, an error in the calculation of the applicable Sentencing Guidelines range can provide a basis upon which an imposed sentence may be challenged. *United States v. Jackson*, 467 F.3d 834, 838-39 (3d Cir. 2006). A motion to withdraw a guilty plea, however, presents an entirely different issue.

6

the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001).

Regardless, the Court agrees with the Government that there was no violation of the September 9 agreement. Black's Law Dictionary offers two definitions for "case-in-chief": "1) The evidence presented at trial by the party with the burden of proof. 2) The part of a trial in which a party presents evidence to support its claim or defense." BLACK'S LAW DICTIONARY 207 (7th ed. 1999). Cases in this circuit reflect the principle in Black's that there must be a trial for there to be a case-in-chief. *See, e.g., United States v. Craft*, No. 02-011, 2006 U.S. Dist. LEXIS 93655, at **15-16 (M.D. Pa. Dec. 28, 2006) (finding for the Government on facts nearly identical to those *sub judice*); *cf. Getch v. Rafferty*, No. 88-4294, 1989 U.S. Dist. LEXIS 16575, at *4 (D.N.J. Aug. 21, 1989) (finding that material used during cross examination was not used during the case-in-chief); *United States ex rel. Hart v. Maroney*, 230 F. Supp. 468, 474 (W.D. Pa. 1964) (same). In the case before the Court, there was no trial and, therefore, the Government could not have used any statements in its case-in-chief.

### 2. The Misunderstood Plea Agreement

Daniels next argues that his guilty plea was not knowing and voluntary because "he misunderstood the provisions of the plea bargain relevant to his potential sentence." Document No. 191, ¶ 9. As the Fifth Circuit has held, "if [a defendant] was mistaken as to the terms of the plea bargain, his original plea must be deemed less than a fully knowledgeable waiver of his rights." *United States v. Pressley*, 602 F.2d 709, 711 (5th Cir. 1979). Defendant "avers he misunderstood the plea process and was operating under the mistaken assumption that the sentence was somehow agreed upon by defense counsel, the Assistant United States Attorney and the Probation Department pursuant to Rule

7

11(c)(1)(C)."[3] Document No. 191, ¶ 10.

In the Third Circuit, a defendant has not plead guilty with the requisite knowledge and voluntariness if the "circumstances as they existed at the time of the guilty plea, judged by objective standards, reasonably justified his mistaken impression." *United States v. Crusco*, 536 F.2d 21, 24 (3d Cir. 1976). Thus, a "mistaken belief regarding the effect of a plea agreement is a permissible basis for withdrawing the plea, provided that the defendant's mistake is reasonable." *United States v. Garba*, 285 F. Supp. 2d 504, 510 (D.N.J. 2003) *vacated on other grounds*, 128 Fed. Appx. 855 (3d Cir. 2005).

As an initial matter, the Court is unconvinced that there was any misunderstanding about the terms of Defendant's plea agreement. Though he invokes Rule 11(c)(1)(C), under which the Parties might have stipulated in the plea agreement to a specific sentence,[4] Defendant acknowledged during the February 26 hearing that at the time of his guilty plea, he understood there was no such agreement in this case. Document No. 210, p. 37. The evidence directly refutes the assertion in the Motion to Withdraw that Daniels "was operating under the mistaken assumption that the sentence was somehow agreed upon." Document No. 191, ¶ 10. Defendant and Prosecutor had the following exchange:

> **Q:** And that Rule 11(c) said that the Government and the defense can agree on a sentence, right?

---

[3] The Court will address this argument despite Defendant apparently abandoning this asserted basis for his Motion at the hearing conducted on February 26, 2007, as discussed *infra* on pages 8-9 of this Memorandum Opinion.

[4] According to Rule 11(c)(1)(C),

> If the defendant pleads guilty or nolo contendere to either a charged offense or a lesser or related offense, the plea agreement may specify that an attorney for the government will . . . agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement).

8

> **A:** Yes.
> **Q:** But we didn't do that in this case, did we?
> **A:** No.
> **Q:** So, at the time you entered your plea you didn't plead guilty back in October thinking that we had agreed on a sentence, did you?
> **A:** No.
> **Q:** You knew at the time when you entered your plea that there was no agreement as to a sentence?
> **A:** Yes.
> . . . .
> **Q:** You state in your motion that there was a—that you were mistaken, that you had an assumption or you assumed that your attorney, the United States and the probation office has agreed on a certain sentence. You never had that assumption?
> **A:** No, I never had that assumption.

Document No. 210, pp. 37, 40.

Secondly, any mistake Daniels did make does not meet *Crusco*'s reasonable standard. At the hearing on his Motion, Defendant claims that he believed the plea agreement provided him the right to withdraw his guilty plea at any time:

> **Q:** And you said that Page 3, Section B(1) gives you the right—of your plea agreement, gives you the right to withdraw your plea?
> **A:** That's what is states in my plea. It says Andre Daniels has the right to withdraw his plea, that's what the plea says word for word. . . . It says: Andre Leonard Daniels is permitted to withdraw his plea of guilty.
> **Q:** Why don't you read the whole sentence, Mr. Daniels, not just half of it?
> . . . .
> **A:** After the imposition of sentence, the United States attorney will move . . . to dismiss the remaining counts of the Indictment at Criminal Number 06-10J, without prejudice to their reinstatement if, at any time, Andre Leonard Daniels is permitted to withdraw his plea of guilty.
> **Q:** Right. So it doesn't say you have the permission to do it, it says only that, if, after all that happens—
> **A:** If, at any time. It says any time.
> **Q:** Well Mr. Daniels, the agreement speaks for itself.

Document No. 210, pp. 26-27. The Court agrees that by the plain language of the plea agreement,

9

Defendant could not have reasonably believed he could withdraw his guilty plea at any time.[5]

Daniels' testimony indicates that the effort to withdraw his guilty plea is in fact motivated by dissatisfaction with the PIR:

> **A:** . . . I never had no problem with the guidelines, I had a problem with the enhancements. The sentencing guidelines I have no problem with that, I know I'm a career criminal, I have no problem with that. I have a problem with the enhancements. We never discussed the enhancements, they never said anything about enhancements in the plea.
>
> . . . .
>
> And the big misunderstanding I had was that the—the enhancement. I didn't know I was pleading to a leadership role. I did not know I was pleading to a leadership—nobody ever discussed enhancements with me.
>
> . . . .
>
> **Q:** So really what it all boils down to then is that enhancement for leadership role, right?
> **A:** Yes.
> **Q:** And the [use in the PIR of information divulged at the September 13 debriefing]?
> **A:** Yes.
> **Q:** That's what upsets you after you read the PSR?
> **A:** Yes.
> **Q:** And that's why you don't agree with that and you want to withdraw your plea now?
> **A:** Yes.

Document No. 210, pp. 32-33, 36, 41.

The Court reiterates its skepticism that objections to the PIR can provide sufficient grounds for the withdrawal of Defendant's guilty plea. Moreover, the Court's colloquy with Daniels on October

---

[5] The relevant provision of the plea agreement, Paragraph B.1, reads in whole:

> After the imposition of sentence, the United States Attorney will move to dismiss the remaining counts of the Indictment at Criminal Number 06-10 J, without prejudice to their reinstatement if, at any time, Andre Leonard Daniels is permitted to withdraw his plea of guilty. In that event, Andre Leonard Daniels waives any double jeopardy, statute of limitations, speedy trial, or similar objections to the reinstatement of the Counts dismissed pursuant to this agreement.

Document No. 134, p. 3.

16, 2006, adequately addressed the terms of his plea agreement, the maximum penalties, the advisory nature of the Sentencing Guidelines, and his options for appeal. Document No. 190, pp. 13-25. The Court reviewed Daniels' capacity to enter a guilty plea at that time and was satisfied that he possessed the proper understanding of not only the nature of those proceedings, but also the effects of his actions. *Id.* at 4-6. Central to the Court's decision to accept Daniels' guilty plea were Defendant's acknowledgment of his lost procedural rights, the voluntariness of his decision, and the possible sentences. The Court concluded at the October 16 hearing that Defendant's guilty plea was knowingly and voluntarily made. *Id.* at 31. Nothing presented in either the Motion *sub judice* or the hearing on that Motion gives the Court reason to suspect its earlier finding. While Defendant may not have anticipated that the PIR would contain certain information or calculate the applicable Sentencing Guidelines range in a particular way, he has properly raised his objections to that document pursuant to Local Criminal Rule 32.1.D. He has also received the Court's tentative rulings on those objections and can expect final rulings before sentence is imposed. Even with a liberal construction in his favor, Daniels' disagreement with the position of the Probation Office does not constitute a fair and just reason to allow the withdrawal of his guilty plea.

### 3. The Assistance of Counsel

Defendant's final argument for withdrawal is that his attorney, Arthur T. McQuillan, "never specifically discussed the fact that [Daniels] could receive an adjustment to his Guidelines calculations for his role in the offense as a leader within the conspiracy." Document No. 191, ¶ 14. In its response, the Government has construed this argument as one for ineffective assistance of counsel and adequately reviewed the reasons why it fails. Moreover, at both the October 16 change-of-plea hearing and the

11

February 26 hearing on this Motion, the Court questioned Defendant about Attorney McQuillan's representation and is satisfied that Daniels has no objection to counsel's performance. Document No. 190, pp. 6-7; Document No. 210, pp. 5-7.

This third argument for withdrawal is in essence a restatement of Defendant's objection to the U.S.S.G. § 3B1.1(a) enhancement, which the Court has already addressed in its Memorandum Opinion & Tentative Findings and Rulings (Document No. 196) and in this Opinion. The Court merely notes at this time that Defendant has no objection to his career-offender status and discussed its effect on sentencing with Attorney McQuillan prior to pleading guilty. Document No. 210, pp. 21, 33. The calculation of the applicable sentencing range contained in the Court's Tentative Findings is based entirely on the career-offender status that Daniels admits, mooting the § 3B1.1(a) adjustment. Thus, even if surprise at an advisory Sentencing Guidelines calculation can establish a fair and just reason for withdrawing a valid guilty plea—and the Court holds that it cannot—Daniels could not have been surprised at the PIR's calculation of the applicable Sentencing Guidelines range of punishment.

## C. Prejudice to the Government

That the burden of proof for a motion to withdraw rests on the defendant reflects the inherent cost of allowing negating a valid recognition of guilt. As the *Jones* court stated, there must be "adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003) (citations omitted). Thus, prejudice to the Government only becomes a consideration if the movant demonstrates sufficient reason for withdrawing the guilty plea. According to the Third Circuit,

12

> the Government is not required to show prejudice when a defendant has shown no sufficient grounds for permitting withdrawal of a plea. Thus, even assuming that the government has failed to show prejudice, we must affirm the district court's decision because [defendant] has failed to demonstrate sufficient grounds for withdrawing his plea.

*United States v. Martinez*, 785 F.2d 111, 116 (3d Cir. 1986) (citation omitted). As Defendant has not demonstrated any fair and just reason for the withdrawal of his guilty plea, the Court need not consider the extent of any prejudice such withdrawal would operate on the Government.

## IV. CONCLUSION

Because Defendant has not meaningfully contested his guilt or provided sufficient explanation why fairness and justice require the withdrawal of his guilty plea, the factors that guide this Court in analyzing the Motion *sub judice* militate heavily in favor of the Government. Moreover, acting in its fullest discretion, the Court is unable to locate any other reason why it should grant Daniels' Motion. Thus, for the foregoing reasons, Defendant's Motion to Withdraw Guilty Plea must be denied.

An appropriate Order follows.

13

AND NOW, this 2nd day of March, 2007, upon consideration of Defendant's Motion to Withdraw Guilty Plea (Document No. 191), the Government's response thereto (Document No. 201), and the presentation made at the February 26, 2007, hearing on Defendant's Motion (Document No. 210), **IT IS HEREBY ORDERED** that Defendant's Motion is **DENIED**.

**IT IS FURTHER ORDERED** that the sentencing hearing continued from February 26, 2007, is hereby rescheduled for **Tuesday, March 6, 2007, at 10:00 a.m**.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE

Cc: **All counsel of record**